UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Douglas Silverstein<br>Lauren Morrison | Jason Campbell<br>Amy Gillinger | |

**Proceedings:**     DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF JARED ANDRESEN (Dkt. #75, filed September 5, 2014)

DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF JOHN DUFFY (Dkt. #76, filed September 5, 2014)

DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF LEE BEKIARIAN (Dkt. #77, filed September 5, 2014)

## I.   INTRODUCTION

     This case concerns alleged failures to pay accrued vacation wages. On February 13, 2013, plaintiffs Jared Andresen ("Andresen"), Yeghia Bekiarian ("Bekiarian"), and John Duffy ("Duffy") (collectively "plaintiffs") filed a lawsuit against International Paper Company ("IP" or "defendant") and Does 1-50 in Los Angeles County Superior Court. See Dkt. #1. Defendant removed the action to this Court on March 22, 2013, on the basis of diversity jurisdiction. Id. The operative Second Amended Complaint ("SAC"), filed on July 12, 2013, asserts claims on behalf of all three plaintiffs for (1) failure to pay vested vacation wages upon termination, in violation of Cal. Labor Code § 227.3; (2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

failure to pay wages in violation of Cal. Labor Code §§ 201-204, 206.5, 218.5, 218.6, 226, 510, 512, 1194, and 1194.2; (3) waiting period penalties in violation of Labor Code §§ 202, 203; (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and (5) violations of record-keeping provisions in Cal. Labor Code § 226. Dkt. #21. The SAC also asserts claims on behalf of Andresen only for (6) breach of contract and (7) promissory estoppel. Id.

On September 5, 2014, defendant filed: (1) a motion for summary judgment or, in the alternative, summary judgment, as to Bekiarian, Dkt. #77; (2) a motion for partial summary judgment as to Andresen, Dkt. #75; and (3) a motion for partial summary judgment as to Duffy, Dkt. #76. Plaintiffs filed oppositions to all three motions on September 15, 2014. Dkt. #81, 85, 86. Defendant replied to all three motions on September 22, 2014. Dkt. #92-94. On October 6, 2014, the Court held a hearing at which counsel for all parties appeared. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND FACTS THAT ARE NOT IN DISPUTE

As detailed below, all three plaintiffs were hired by Crockett Containers ("Crockett"). In 1990, Temple-Inland ("TIN") purchased Crockett. Bekiarian Def.'s Undisputed Facts ("BDUF") ¶ 4. In 2012, IP acquired TIN, including Crockett. Id. ¶ 5.

Crockett hired Andresen in or around 1977 as a commissioned sales representative. Andresen Def.'s Undisputed Facts ("ADUF") ¶ 1. Andresen has testified that he remained a sales representative from the time he worked for Crockett until the time he resigned from IP. Andresen Pl.'s Undisputed Facts ("APUF") ¶ 3. Id. ¶ 5. Andresen resigned from IP on June 15, 2012. ADUF ¶ 15. In addition to his other claims, Andresen alleges that IP owes him $22,000 in commissions outstanding as of the time he resigned. Id. ¶ 19.

Bekiarian began working for Crockett in 1973. BDUF ¶ 1. He held several positions throughout his employment with Crockett and TIN, and was named President and Chief Operating Officer in 1995. Id. ¶ 2. Bekiarian resigned from IP on November 30, 2012. BDUF ¶ 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Crockett hired Duffy in or around 1986. Duffy Def.'s Undisputed Facts ("DDUF") ¶ 1. Duffy resigned from IP on November 30, 2012. Id. ¶ 15. In addition to his other claims, Duffy alleges that IP owes him $8,000 in commissions outstanding at the time he resigned. Id. ¶ 19.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

## IV. DISCUSSION

### A. Issues Relevant to All Three Motions

1. Defendant's Liability for Benefits Accrued Prior to its Acquisition of TIN

As to each plaintiff, defendant contends that its liability for any accrued vacation pay must be limited to the periods during which IP employed plaintiffs. According to defendant, it cannot be liable for vacation pay accrued while plaintiffs were employed by Crockett or TIN because plaintiffs did not consent to a transfer of those benefits from Crockett to TIN, or from TIN to IP. This argument lacks merit because it is grounded in a section of the Labor Code and a California Court of Appeal decision that are inapplicable to the present case. In particular, defendant relies on Labor Code Section 2920, which states that "[e]very employment is terminated by . . . extinction of its subject." Cal. Labor Code § 2920(b). This section of the Labor Code is merely a reflection of the general principle that "[a]n agency or employment is terminated by expiration of the term, extinction of the subject matter, or the deal or incapacity of either the principal or agent." See 3 Witkin, Summ. Cal. Law Agency § 205 (10th ed. 2005) (citing section 2920 in support of the statement of the "[g]eneral rule" regarding the lawful termination of agency or employment by operation of law).

The case cited by defendant in support of this argument, Chapin v. Fairchild Camera etc. Corp., 31 Cal. App. 3d 192 (1973), is similarly inapposite. There, the defendant, Fairchild, sold its "Memory Products" department to another company, Core Memories. Id. at 194-95. Core Memories represented to the employees of the Memory Products department that it would retain them under employment terms substantially similar to terms that existed when Fairchild was their employer. Id. at 195-96. However, shortly after the sale occurred, Core Memories terminated approximately half of the former Fairchild employees. Id. at 195. Core Memories paid severance benefits to some of these employees, but they were not as favorable as the severance benefits offered by Fairchild. Id. The employees sued Fairchild, their former employer, seeking the severance benefits that they would have received if they had been laid off by Fairchild directly. Id. The trial court found that the plaintiff employees' transfer from Fairchild to Core Memories constituted a novation of the employee's terms of employment, and that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Fairchild was no longer obligated to provide benefits to its former employees. Id. at 196. The Court of Appeal reversed, holding that "Fairchild's sale of Memory Products was a permanent layoff of the [plaintiff employees]," which gave rise to an obligation on the part of Fairchild to pay severance benefits on the terms available to any terminated employee. Id. at 198. The court reasoned that Fairchild's sale of Memory Products "was entirely involuntary on the part of the [plaintiff employees]," and that the sale "made it wholly impossible for the Employees to continue their employment with Fairchild." Id. at 199.

Here, defendant argues that, under Chapin and section 2920, liability for employee benefits remains with the original employer, absent the express written consent of the employees to whom the benefits are owed. However, neither Chapin nor section 2920 applies to the present case, where plaintiff seeks to hold defendant liable for accrued vacation pay on the grounds that it is a successor to TIN and Crockett. Successor liability in California is governed by the framework set forth in Ray v. Alad Corp., 19 Cal. 3d 22, 28 (1977). In Ray, the California Supreme Court explained that a corporation purchasing the principal assets of another corporation

> does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

Id. In support of their contention that defendant is liable as a successor to Crockett and TIN, plaintiffs provide Bekiarian's testimony that the "accrued vacation" policies in effect at Crockett "were carried forward" when Crockett was acquired by TIN, as set forth in a memorandum to employees. See Bekiarian Dep. 158-61; 167. Similarly, Bekiarian testified that all benefits provided by TIN were "carr[ied] forward" unchanged when IP took over TIN. Id. at 160. This evidence gives rise to a genuine issue of material fact as to whether an "express or implied agreement of assumption" existed between Crockett and TIN, and between TIN and IP. Moreover, plaintiffs provide evidence that IP's acquisition of TIN constituted a merger of IP and TIN. See generally Bates Depo. Ex. 6 ("Agreement and Plan of Merger between [IP], Metal Acquisition Inc., and [TIN]"); Andresen's Request for Judicial Notice ("ARJN") Exs. A, B (10-Q and 10K

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

filings). This evidence provides an additional potential basis for successor liability. See Ray, 19 Cal. 3d at 28. Based on this evidence, the Court concludes that genuine disputes of material fact exist as to whether IP is liable for alleged vacation pay accrued prior to its acquisition of TIN.

    2.    Statute of Limitations

Next, defendant argues that plaintiffs' claims for any vacation pay accrued prior to February 13, 2009, are barred by the four-year statute of limitations applicable to such claims.[1] Defendant contends that, long before 2009, each plaintiff knew or should have known that he was not going to be paid "vacation wages," and that the statute of limitations began to run each time one of the plaintiffs took vacation and did not receive "vacation wages." But plaintiffs assert claims *only* for accrued but unused vacation days.[2] Therefore, defendant's arguments as to the statute of limitations for taken but unpaid vacation claims are irrelevant, as are defendant's arguments that plaintiffs should have sued for declaratory relief or breach of contract when they were not paid special vacation wages.

---

[1] Defendant asserts that the applicable statute of limitations for vacation wage claims is an open question, but assumed for purposes of this motion that a four-year period applied. Andresen MSJ at 12 n.6. The Court need not address this issue at this stage because, for the reasons stated herein, plaintiffs' claims were filed well within the shortest statute of limitations (two years) defendant states might apply.

[2] See Andresen Opp'n at 21 n.7 ("Plaintiff is only seeking compensation for vacation days accrued and not used during his employment. Plaintiff is not seeking any compensation for vacation days which he took during his employment–because he was paid his base plus commissions for the vacation days he used."); Duffy Opp'n at 17 n.6 (same); Bekiarian Opp'n at 22 n.7 ("Plaintiff is only seeking compensation for vacation days accrued and not used during his employment. Plaintiff is not seeking any compensation for vacation days which he took during his employment–because he was paid his full salary for the vacation days he used.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Because plaintiffs' claims for vacation pay are premised on vacation days that plaintiffs accrued, but never used, the timeliness of their claims is governed by Church v. Jamison, 143 Cal. App. 4th 1568, 1576 (2006). There, the Court of Appeal explained that "[u]nder Labor Code Section 227.3, an employee has the right to be paid for unused vacation only after the employee is terminated without having taken off his vested vacation time." Id. The Court of Appeal therefore concluded that a "cause of action seeking payment for unused vested vacation [does] not accrue" until the termination of the employment relationship. Id. at 1577. The Court accordingly finds that plaintiffs' claims for unpaid vacation benefits did not accrue until they resigned on June 15, 2012 (Andresen) or November 30 (Bekiarian and Duffy). Because less than a year elapsed between these dates and the filing of this lawsuit, the statute of limitations does not bar any vacation pay claim.

       3.    Laches

In addition to arguing that plaintiffs' claims are barred by the statute of limitations, defendant also argues that plaintiffs' claims are barred by the equitable doctrine of laches. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." Johnson v. City of Loma Linda, 24 Cal. 4th 61, 68 (2000). Defendant cites Sequeira v. Rincon-Vitova Insectaries, Inc., 32 Cal. App. 4th 632 (1995) for the proposition that plaintiffs' claims, some of which are grounded on vacation pay allegedly accrued several decades ago, are barred by laches because plaintiffs' memories of pertinent facts have faded and documentary evidence is lacking for earlier claims. Defendant contends that plaintiffs' inability to recall the details of their past compensation as well as the dates and durations of vacations they took hinders defendant's ability to defend against plaintiffs' claims.

The Court finds defendant's argument unpersuasive. Sequeira was decided prior to a change in the law governing the accrual of claims for vested vacation wages. At the time that Sequeira was decided, a claim for vacation wages accrued at the same time that the wages vested, that is, at the time that they were earned. See id. at 636-37. However, in Church, discussed above, the Court of Appeal held that a claim for vested vacation wages accrues at the time of termination. The Court finds Church to be more persuasive than Sequeira because it represents the most recent statement from the California courts

Case 2:13-cv-02079-CAS-SP Document 116 Filed 10/06/14 Page 8 of 16 Page ID #:5868

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

regarding the accrual of claims for vested vacation wages. Moreover, the Sequeira court grounded its conclusion in large part on deference to the position of the DLSE on the accrual of such claims. Since Church was decided, the DLSE has taken the position that, "[i]n the case of an employee with vested vacation entitlement at termination," the statute of limitations begins to run "at the time final wages are due." DLSE Enforcement Policies and Interpretations Manual § 15.1.9, available at http://www.dir.ca.gov/dlse/ DLSE_EnfcManual2012.pdf. So, as stated above, the Court concludes that the claims for vested vacation wages accrued at the time of termination.

Because plaintiffs' claims for vested but unused vacation benefits accrued at the time that they separated from IP, the Court finds that there is a disputed issue of material fact as to whether plaintiffs unreasonably delayed in filing this action. As stated above, plaintiffs waited less than a year from the accrual of their claims to bring this lawsuit–a time period that cannot be said to be unreasonable as a matter of law. Indeed, if plaintiffs had attempted to file this action prior to the termination of their employment, it would have been subject to "dismiss[al] as premature." Church, 143 Cal. App. 4th at 1577. Furthermore, the Court does not find persuasive defendant's argument that laches should apply to bar plaintiffs' section 227.3 claims as a matter of law, before those claims even accrued, because the same underlying facts could arguably have supported a breach of contract or declaratory action. Cf. Molina v. Lexmark Int'l, No. CV 08-4796 MMM (FMx), 2008 WL 447678 (C.D. Cal. Sep. 30, 2008). Accordingly, granting summary judgment in defendant's favor would be inappropriate. See Johnson, 24 Cal. 4th at 68.[3]

### B. Issues Relevant Only to Andresen and Duffy

1. Defendant's Argument that Andreson and Duffy Did Not Earn Claimed Commissions Before Resigning

Defendant argues that "it is undisputed that the policy and long-standing practice governing [Andresen's and Duffy's] commission compensation provided that: (1) commissions were not payable until the product shipped and that (2) [Andresen and

---

[3] The Court also notes that, since Sequeira, no reported opinion has found a claim under section 227.3 to be barred by laches.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Duffy] had to be employed by International Paper at the time the product was shipped in order to earn the commission." Andresen MSJ at 4 (emphasis omitted) (citing ADUF ¶¶ 12-13); Duffy MSJ at 4-5 (citing DDUF ¶¶ 12-13). Defendant asserts that the undisputed evidence shows that Andresen and Duffy did not satisfy these conditions, and that defendant is therefore entitled to summary judgment on the claims for unpaid commissions.

At oral argument, counsel for plaintiffs contended that recent deposition testimony indicates that the incentive plan submitted with defendant's moving papers was not adopted until after Andresen and Duffy had separated from IP, and accordingly does not govern the commissions at issue. Plaintiffs' counsel therefore requested pursuant to Fed. R. Civ. P. 56(f) that the Court continue its decision on this issue to allow the parties to address the new evidence. The Court directed the parties to meet and confer and file a joint report directing the Court's attention to relevant portions of the record. The Court ordered the parties to submit no more than two pages each of argument based on the new evidence. The Court therefore takes no position at this time on defendant's motion for summary judgment on Andresen's and Duff's claims for unpaid commissions.

> 2. Defendant's Argument that Andresen and Duffy's Vacation Pay Must Be Calculated At Their Hourly Rates of Pay

Defendant must pay vacation wages, to the extent that they are due, at plaintiffs' "final rate[s] of pay." See 3 Witkin, Summ. Cal. Law Agency § 418 (10th ed. 2005); see also Cal. Labor Code § 227.3 (stating that accrued vacation wages must be paid at the employee's "final rate in accordance with such contract of employment or employer policy respecting eligibility or time served"). Thus, the question is what rate plaintiffs "would have been paid during a vacation, had [they] taken one" at the point when their employment was terminated. See Drumm v. Morningstar, Inc., 695 F. Supp. 2d 1014, 1019 (N.D. Cal. 2010).

Defendant contends that this "final rate" should be calculated based on the hourly rates listed on Andresen's and Duffy's pay stubs ($25.125 and $42.25 per hours, respectively). In support, defendant points to TIN's Human Resources Policy Handbook, dated October 2006, which states that "[a] vacation day is compensated at the employee's regular rate of pay at the time the vacation day is used." Duffy MSJ Gillinger Decl. Ex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

B (attached Ex. 19) at 33. Andresen responds with his own deposition testimony that, just prior to his resignation from IP, he was a "salaried employee" paid a base plus commissions earned. See Andresen Morrison Decl. Ex. A (Andresen Depo. 52:9-22). Andresen also points to a copy of his final two-week paycheck for $12,573.90, which he contends comprised his base salary of $2010 plus commissions. See id. Ex. 13. Duffy highlights his deposition testimony that his final rate of pay included a five-percent commission, Duffy Morrison Decl. Ex. A. (Duffy Depo. 21-26, 137:23-138:6), as well as his final two-week paycheck, which he asserts included incentive pay above his $42.25 hourly rate, Bates Decl. Ex. A. (filed with Duffy MSJ).

The Court finds that both Andresen and Duffy have raised material issues of fact as to the method calculating any vacation pay to which they are entitled. As one Division of Labor Standards Enforcement opinion letter states, "there could be numerous combinations of draws and commissions available as a basis for setting a vacation policy." DLSE Opinion Letter 1986.11.17, available at http://www.dir.ca.gov/dlse/opinions/1986-11-17.pdf. On the record before it, the Court cannot conclude as a matter of law that, had Andresen or Duffy taken a vacation at the time that their employment with IP ended, they would only be entitled to wages calculated at their base hourly rate, without any reference to commissions. See Drumm, 695 F. Supp. 2d at 1019. Therefore, the Court determines that triable issues of material fact exist with regard to this issue.

     **C.**    **Defendant's Argument that Andresen's Severance Claim Fails Because He Did Not Meet the Terms of His Severance Agreement**

          1.    Breach of Contract

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for her nonperformance thereon; (3) defendant's material breach; and (4) resulting damages. Wall Street Network, Ltd. v. N.Y. Times Co., 164 Cal.App. 4th 1171, 1178 (2008).

Defendant argues that Andresen's claim for breach of contract fails as a matter of law because he voluntarily resigned and was therefore ineligible for severance under the Enhanced Severance Pay Policy ("ESPP"), which states, "Eligible employees will not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

receive severance unless their employment is involuntarily terminated by the Company without 'cause.'" ADUF ¶ 21.

    Andresen responds that he is asserting a claim for breach of an *oral* contract. It is undisputed that, on May 22, 2012, Andresen filed a Request for Consideration of Termination for Employment that stated: "I understand that [IP] is considering a reduction of its work force and that severance will be offered. I understand that neither the reduction in force nor eligibility for severance will be voluntary. I nonetheless request that my employment be terminated as part of the reduction in force provided that I will be eligible for severance . . . ." APUF ¶ 19. It is also undisputed that Andresen met with Bates, who handed Andresen a form with the IP Enhanced Severance Package with $57,750.70 written on top of it. Id. ¶ 20. Andresen has testified that, based on his conversation with Bates, it was Andresen's understanding that he would be entitled to a severance package if he resigned. Id. ¶ 21; see Andresen Depo. at 121:19 - 122:2 (Morrison Decl. Ex. A.) (testifying that Bates "told me I was entitled to the Enhanced Severance Pay Policy"). Andresen contends that he accepted this oral offer from Bates and performed his part of the oral contract by resigning, and that IP breached and damaged him by refusing to pay severance. In his resignation letter, Andresen asked for his severance check to be sent to him. APUF ¶ 23.

    Defendant replies that, notwithstanding Andresen's evidence of the purported oral agreement, defendant is entitled to summary judgment because Andresen signed the written Request for Consideration of Termination for Employment, which incorporated the ESPP and stated that Andresen "understand[s] that all terms of the Policy will apply." Andresen MSJ Reply at 5. In addition to providing that severance would only be provided to employees who were involuntarily terminated, the ESPP provided that "[n]o person has the authority to make any verbal statements relating to this policy or the benefits hereunder at any time which (I) are legally binding on the company or (ii) alter this policy." ADUF ¶ 22. Finally, defendant argues that Andresen's claim of an oral contract must fail because Bates wrote the $57,765.70 figure on a copy of the ESPP, demonstrating that Bates "offered Andresen nothing more than benefits under the written ESPP–benefits that were expressly payable only in the event that Andresen's written and signed Request for Consideration for Involuntary Termination was accepted and granted by [IP], neither of which events occurred." Andresen MSJ Reply at 6 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

The Court finds that a genuine issue of material fact exists as to whether Andresen entered into an oral agreement–separate from the ESPP–in which Andresen would receive a severance package in exchange for his resignation. Although defendant has pointed to evidence that may cast doubt on Bates's authority to offer Andresen an oral agreement involving severance, defendant has not shown as a matter of law that no such agreement could have existed.

2. Promissory Estoppel

Plaintiff asserts a promissory estoppel claim premised on the same essential facts as above. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial nature on the part of the promissee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Signal Hill Aviation Company, Inc. v. Stroppe, 96 Cal. App. 3d 627, 638 (1979) (quoting Restatement (First) of Contracts § 90). "[P]romissory estoppel is distinct from contract in that the promissee's justifiable and detrimental reliance on the promise is regarded as a substitute for consideration required as an element of an enforceable contract." Id. Under California law, a plaintiff claiming promissory estoppel must allege "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" Poway Royal Mobilehome Owners Ass'n v. Poway, 149 Cal. App. 4th 1460, 1471 (2007) (quoting Toscano v. Greene Music, 124 Cal. App. 4th 685, 692 (2004).

Defendant asserts that Andresen's own testimony shows that he believed Bates had told him he was entitled only to the ESPP, and "that the undisputed evidence shows that there is no dispute as to a clear promise to provide severance apart from the written terms of the ESPP." ADSUF ¶ 23. Defendant further argues that even if Bates had promised Andresen severance apart from the ESPP, Andresen could not reasonably rely on such a promise because of the ESPP's statement that no person could orally alter the policy. In support, defendant cites Hackethal v. Nat'l Cas. Co., 189 Cal. App. 3d 1102, 1111-12 (1987). In Hackethal, the court held that an insurance company was entitled to a directed verdict on a fraud claim where the plaintiff relied on alleged misrepresentations by an agent that directly contradicted the terms of an insurance policy and clear statements in a brochure that the insurance coverage was governed by the terms of the policy. Id. Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

viewing the evidence in the light most favorable to the non-movants, Andresen's contention is not that Bates orally misrepresented the terms of a written agreement he entered into (as in Hackethal), but that Bates orally offered him a severance package in exchange for his resignation. Whether this promise was made as Andresen describes it, and whether it was reasonable for Andresen to rely on it, are questions of fact. Therefore, for the same reasons that judgment as a matter of law is not justified with regard to Andresen's breach of contract claim, Andresen's proffered evidence is sufficient to raise a material issue of fact as to his justifiable reliance on Bates's alleged promise.

### D. Issues Relevant Only to Bekiarian

#### 1. Equitable Estoppel

Defendant asserts that the doctrine of equitable estoppel bars Bekiarian from asserting his vacation claims "because it was his job to verify the accuracy of accrual figures that he knew did not include his own alleged vacation accruals and knowingly caused Crockett, TIN, and [IP] to rely on those verifications to their detriment." Bekiarian MSJ at 5 (emphasis omitted). Equitable estoppel can be part of a cause of action or a defense. 13 Witkin, Summ. Cal. Law Equity § 191 (10th ed. 2005). The elements are "(a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that the party was induced to act on it." Id.

Defendant argues that Bekiarian was ultimately responsible for accruing vacation for himself and sales representatives at Crockett, TIN, and IP, and failed to do so. See BDUF ¶¶ 6-9, 11. Defendant asserts that Bekiarian also failed to disclose purported vacation accruals for himself or any commissioned sales representative when TIN acquired Crockett, or when IP acquired TIN. Id. ¶¶ 14-15. Defendant contends that Bekiarian admits that he reviewed balance sheets that should have included his vacation accruals, and failed to do so, id. ¶¶ 9, 11, amounting to knowing concealment. Finally, defendant asserts that Bekiarian signed monthly closing reports for purposes of reporting contingent liabilities, including accrued vacation, for both TIN and IP, and never corrected missing accrued vacation, instead verifying the accuracy of reports that did not include the significant accrued vacation he now claims. Id. ¶¶ 7, 12. Thus, defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
|---|---|---|---|
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

argues, Bekiarian "precluded Crockett, TIN and/or [IP] from accounting for, managing, mitigating, or eliminating the liability Bekiarian alleges in this lawsuit." Bekiarian MSJ at 6.

Bekiarian responds that IP was aware that Bekiarian was entitled to accrued and unused vacation pay because, when Bekiarian retired, IP paid Bekiarian for some of his accrued but unused vacation hours. Specifically, Bekiarian testified that he was paid for 368 hours of accrued vacation pay when he retired. Bekiarian Pl.'s Additional Evidence in Dispute ("BPAE") ¶ 53. Bekiarian also submits employee policy documents from Crockett, TIN, and IP, all of which state that the maximum amount of vacation an employee could earn in one year was six weeks . Bekiarian Morrison Decl. Ex. E (IP 775, 802, 983, 1123-24, 1168). Thus, Bekiarian argues, he was paid for more vacation time than he could possibly have earned in the nine months that Bekiarian worked for IP, showing that IP was on notice that he had accrued vacation time.[4] Bekiarian also testified that (1) he was told when he was hired that he was entitled to paid vacation; (2) that when IP acquired TIN, Bekiarian received a policy stating that his vacation benefits would remain the same; and (3) that Bekiarian banked vacation four times while working for TIN. See BPAE ¶¶ 50-52. Bekiarian further testified that he sold back vacation days in exchange for a reduction in the cost of health insurance benefits, the documents for which "most likely" came from corporate headquarters. See Bekiarian Depo. II 306:11-14, 307:18-23.

Bekiarian also argues that it was not his direct responsibility to track vacation days, that he relied on his subordinates to keep track of vacation accruals, and that he never told any subordinate not to disclose his accrued vacation days or those of any sales representative. Bekiarian testified that it was the responsibility of the HR manager and

---

[4] Bekiarian calculates in his brief that 368 hours is "46 days or 6.57 weeks." Bekiarian Opp'n at 10. It seems more likely that, for purposes of paid vacation, 46 days would constitute just over nine weeks, since one of TIN's handbooks stated that employees who had thirty years of service "have a grandfathered benefit of 30 days vacation per year," Bekiarian Morrison Decl. Ex. E (IP 983), and subsequent TIN and IP policy documents referred to employees with thirty or more years of service having "6 weeks" of vacation benefits per year, id. (IP 1124, 1168).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Controller to keep track of vacation days accrued and used. BPAE ¶¶ 43, 48. He denies ever making tallies or calculations of his accrued vacation days until he retired from IP. Id. ¶ 45. He testified that, when reviewing financial documents, he was not aware of what the vacation accruals were, or what instructions his subordinates had with regard to accounting for them. Id. ¶ 47. Bekiarian states that, when he signed off on monthly reports, he relied on the Controller to "do her job." Id. ¶ 58. Bekiarian testified that he never instructed the HR manager or Controller not to account for vacation days for himself or sales representatives, or that Bekiarian or sales representatives were not entitled to paid vacation days. Id. ¶¶ 48, 56, 62. Moreover, Bekiarian denies ever being asked upon IP's acquisition of TIN if there were contingent liabilities stemming from accrued but unused vacation time. Id. ¶ 57.

The Court finds that Bekiarian has raised genuine issues of fact that preclude summary judgment on equitable estoppel. At minimum, defendant has not met its burden of showing as a matter of law that Bekiarian made a material concealment or representation of fact with the intention that defendant rely on it.

2.     Unclean Hands

Defendant asserts that the same conduct described in the preceding section also bars Bekiarian's claims under the doctrine of unclean hands. "In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones." Adler v. Fed. Rep. Of Nigeria, 219 F.3d 869, 877 (9th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Aug. 17, 2000) (citing Jacobs v. Universal Dev. Corp., 53 Cal. App. 4th 692, 699 (1997). California courts determining whether the defense applies consider "the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." Blain v. Doctor's Co., 222 Cal. App. 3d 1048, 1060 (1990). Defendant asserts that Bekiarian's failure to report vacation accruals was intentional and exposed IP and Bekiarian's former employers to the very liability Bekiarian now alleges.

In addition to arguments discussed above to the effect that IP did have notice of Bekiarian's claims, Bekiarian argues that the unclean hands doctrine cannot be applied at the summary judgment stage. The "general rule" is "that application of the doctrine of unclean hands is a question of fact." CrossTalk Prods., Inc. v. Jacobsen, 65 Cal. App. 4th 631, 639 (1998); see also Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-02079-CAS(AJWx) | Date | October 6, 2014 |
| Title | JARED ANDRESEN, ET AL. v. INTERNATIONAL PAPER COMPANY, ET AL. | | |

4th 970, 978 (1999) ("Whether the doctrine of unclean hands applies is a question of fact."). Citing this "general rule," one California Court of Appeal has stated that "application of the unclean hands doctrine . . . is not properly determined . . . . on a summary judgment motion." Mattco Forge, Inc. v. Arthur Young & Co, 5 Cal. App. 4th 392, 407-08 (1992) (citation omitted); see also Kim v. InterDent, Inc., No. C 08-5565 SI, 2010 WL 315011, at *13 (N.D. Cal. Aug. 3, 2010) ("There are numerous factual questions implicated by the unclean hands defense, and those questions cannot be resolved on summary judgment."). Defendant, however, points to other cases in which California courts have upheld grants of summary judgment on unclean hands grounds. See, e.g., Derosa v. Transamerica Title Ins. Co., 213 Cal. App. 3d 1390, 1395-97 (1989) (upholding summary judgment on unclean hands grounds in malicious prosecution case); Pond v. Insurance Co. of N. Am., 151 Cal. App. 3d 280, 289-90 (1984) (similar); see also Intamin, Ltd. v. Magneta Techs. Corp., 623 F. Supp. 2d 1055, 1078 (C.D. Cal. 2009) (granting summary judgment in a patent action).

Bekiarian has presented enough evidence that he did not intentionally or prejudicially conceal vacation accrual information from his employers to persuade the Court that "[t]his case presents no exception to the general rule that application of the doctrine of unclean hands is a question of fact" ill-suited to pretrial adjudication. See CrossTalk, 65 Cal. App. 4th at 639. Moreover, although a consideration of "analogous case law" is one of the three factors considered by California courts in applying the doctrine, defendant has not cited a single case wherein the doctrine was applied to bar similar claims. Therefore, the Court finds that defendant's unclean hands defense is not suitable to summary adjudication.

## V.     CONCLUSION

In accordance with the foregoing, defendant's motions are GRANTED in part and DENIED in part. Specifically, the court GRANTS summary judgment on Andresen's and Duffy's claims for unpaid commissions, and otherwise DENIES the motions.

IT IS SO ORDERED.

| | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |